UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT MORRIS,<br><br>     Petitioner,<br><br> vs.<br><br>WARDEN BRENT FLUKE,  SOUTH DAKOTA ATTORNEY GENERAL,<br><br>     Respondents. | 4:20-CV-04040-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the *pro se* habeas petition of Robert Morris, a prisoner in a South Dakota state prison.  <u>See</u> Docket No. 1. Respondents now move to dismiss Mr. Morris' petition without holding an evidentiary hearing on the grounds that his claims are time-barred and procedurally barred.  <u>See</u> Docket No. 8.  Mr. Morris opposes the motion.  <u>See</u> Docket Nos. 9 & 10.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

**FACTS**

The court has taken notice of the state court files in Mr. Morris' underlying criminal matters at both the circuit court and supreme court levels

as well as his state court habeas file.  The following facts are pertinent to the issues raised by the parties.

On the morning of July 3, 2012, police received a complaint from a 12-year-old victim (hereinafter "V") that she had spent the night at Mr. Morris' home near Sioux Falls, South Dakota, and woke up to find her shorts pulled down and Mr. Morris' penis in her hand with a wet substance on it, which V wiped on a furry black blanket she had been sleeping on.  V's story was extremely detailed.  She had spent the night with Mr. Morris, a friend of her mother's, on several occasions.

Once, a little after Christmas, V and her sibling both spent the night at a Sioux Falls hotel with Mr. Morris.  V described the hotel as being near a Billion automotive lot and stated the hotel had a swimming pool.  V slept in the same bed as Mr. Morris and her sibling slept in the other bed in the room.  V woke up in the night to find Mr. Morris' finger in her vagina, which she described as "uncomfortable."  She got up, went to the bathroom, and spent the rest of the night in bed with her brother.  Mr. Morris asked her to come back to his bed with him, but V demurred.  V did not disclose this occurrence to anyone else at the time.

V described Mr. Morris as buying her Fuze drinks and giving them to her to drink, paying her a dollar to finish the drink.  V stated the drinks did not taste like the Fuze drinks she drank on other occasions when she was away from Mr. Morris.  V stated she would always get sleepy after drinking these Fuze drinks given to her by Mr. Morris.

2

A physical examination of V on July 3, 2012, revealed a red spot near her hymen in her vagina and that her panties were saturated with something wet. Hotel records for a hotel right across 12th Street in Sioux Falls from a Billion Auto Chevrolet and Nissan dealership confirmed Mr. Morris had rented a hotel room there at the time V described the penetration.

Police went to Mr. Morris' home where V had spent the night on July 3, 2012, and found Mr. Morris passed out in the living room. He did not respond to officers shouting at him and trying to rouse him. Mr. Morris finally awoke after a "sternum rub" was administered to him by one of the officers. Mr. Morris was taken to police headquarters for questioning.

While riding in the back seat of the patrol car to police headquarters, the officer driving Mr. Morris observed him in the rear view mirror retrieving his cell phone from his pocket and manipulating it. The officer pulled over to the side of the road and took Mr. Morris' cell phone and wallet from him. He then resumed driving Mr. Morris to the police station.

At the police station, Mr. Morris was read his Miranda rights, whereupon he invoked his right to counsel. Police honored this invocation immediately and left the room. When another officer came to book Mr. Morris into the jail, Mr. Morris repeatedly asked to know how V was and whether he had hurt V. The original officer came back to the holding room and explained to Mr. Morris that they could not continue to converse with him because he had invoked his right to counsel. Mr. Morris stated he wanted to talk to the officers. They re-

administered his <u>Miranda</u> warnings and Mr. Morris waived his rights and spoke to the officers.

Mr. Morris professed to have no memory of any actions from the night before except that he was mowing and cutting weeds and drinking heavily. He stated he blacked out while cutting weeds and did not remember anything after that. He admitted he had a drinking problem. He stated several times that V meant the world to him. He stated that V would never lie. He also stated if V said the sexual abuse happened, then it happened. Although he did not admit to abusing V, Mr. Morris confessed he had an avid curiosity regarding how prepubescent girls' bodies changed as they approached and went through puberty. He admitted to having taken V clothes shopping the night before and peeking down her shirt when she bent over to tie her shoe. Mr. Morris was then placed formally under arrest.

On the strength of V's statements, the findings of her physical examination, and Mr. Morris' own statements, police on July 3, 2012, applied for and obtained a search warrant for Mr. Morris' cell phone, wallet and person, to include buccal swabs and fingernail clippings. A second search warrant based on the same evidence was obtained on the same day for Mr. Morris' home. Before the search warrant on Mr. Morris' person was executed, the executing officer handed Mr. Morris a written copy of the search warrant and allowed him to read it.

At Mr. Morris' home, officers found numerous pornographic photographs taken of V by Mr. Morris on either his cell phone or with his camera. Some of

the photos were identified to have been taken in Mr. Morris' home and some in the hotel room across from Billion Auto, based on items that were visible in the background of the photos. Officers also found a nude photo of an unknown 12-13 year-old girl whom the officers were unable to identify. In addition, Mr. Morris had Xanax pills in a prescription medicine bottle labeled Acyclovir. A Fuze bottle was found in the garbage with the residue of some cloudy liquid. There were several Fuze bottles in Mr. Morris' refrigerator, all of which were filled with clear—not cloudy—liquid.

On July 4, 2012, a state court judge reviewed law enforcement investigative reports and other documents submitted to it and determined that there was probable cause in support of Mr. Morris' warrantless arrest. The court ordered that Mr. Morris be detained by the sheriff and brought to court on July 5, 2012.

The state filed a two-count complaint against Mr. Morris on July 5, 2012, charging him with one count of sexual contact with a child under the age of 16 and one count of first-degree rape of a child less than 13 years old. This was state criminal file #12-4327. Mr. Morris appeared in state court on July 5, 2012, on this complaint and requested and received a court-appointed lawyer. Bond was set at $500,000 based on both risk of flight and danger to the community.

On July 18, 2012, the complaint against Mr. Morris was replaced with a two-count indictment charging him with one count of first-degree rape for the

digital penetration incident described by V and sexual contact for the July 2/3, 2012 event.

While Mr. Morris was detained pre-trial at the Minnehaha County jail, he had a telephone call with his sister that was recorded and which police listened to. He instructed his sister, from Texas, to go to his home in South Dakota and retrieve a combination safe he had hidden there. Mr. Morris gave his sister the combination to the safe, but exhorted her not to open it as he claimed it had adult nude photos of his former girlfriend. The sister promised to respect Mr. Morris' privacy and agreed to retrieve the safe.

Mr. Morris' daughter-in-law, who had lived with her husband (Mr. Morris' son) in Mr. Morris' home in South Dakota for several months also contacted police. She described Mr. Morris' relationship with V to be "not right." The daughter-in-law described how Mr. Morris was always touching V and bought her expensive presents. The daughter-in-law also described a combination safe which Mr. Morris kept next to his bed in his bedroom.

South Dakota police contacted Texas police and arranged to have a search warrant issued for the combination safe. A search warrant affidavit and accompanying search warrant was sworn out in South Dakota, and another search warrant affidavit and search warrant were sworn out in Texas. Texas police officers executed the search warrant and seized the safe from Mr. Morris' sister. The safe itself was extremely heavy, leading officers to decide not to pay to have the safe transported back to South Dakota. Instead, the Texas officers

opened the safe and mailed the entire contents thereof back to South Dakota police officers.

Several days after Mr. Morris' July 3, 2012, transportation to the Minnehaha County jail, the transporting officer had occasion to transport someone else in the back of his patrol car. The new rider discovered a 4 gigabyte mini SD card in the back seat and stated it was not theirs. The officer, thinking the SD card belonged to another police officer, posted the card on a bulletin board at police headquarters where it stayed for several days.

Finally, another officer removed the SD card from the bulletin board and put it into a reader, simply trying to identify the owner of the SD card. When the SD card was loaded onto the reader, the officer saw some photos of Mr. Morris, his home, and items at his home. The officer then stumbled upon a pornographic photo of V.

The officer immediately stopped looking at the contents of the SD card. Due to the earlier photos, the officer was able to discern that the card belonged to Mr. Morris. The officer applied for and obtained a search warrant for the SD card. When the card was thoroughly examined pursuant to the search warrant, there were numerous pornographic photos of V. Many of these photos included depictions of the hands of the photographer.

Officers then applied for further search warrants to be able to take photographs of Mr. Morris' hands, to examine again his cell phone at the jail, and to examine numerous DVDR, CDs, DVDs, mini SD cards, thumb drives, and a Toshiba laptop seized from Mr. Morris' home. Examination of

Mr. Morris' cell phone revealed it was missing its SD card and that the SD card discovered in the back of the patrol card fit the cell phone. The execution of these search warrants also led the officers to additional evidence of Mr. Morris' sexual abuse of V over a period of approximately 18 months.

On September 25, 2012, another indictment was issued against Mr. Morris alleging six counts of first-degree rape, six counts of sexual contact, and possession of child pornography. A new criminal case file—case #12-6184—was used for the new indictment, resulting in two separate but related criminal files pending against Mr. Morris. On January 17, 2013, Mr. Morris entered into a plea agreement whereby he agreed to plead guilty to one count of first-degree rape—count IV of the indictment in case #12-6184— and the state would dismiss all other charges in both cases. The state agreed that Mr. Morris' sentence should be capped at 60 years actual prison time, but he could be sentenced to more time if it were suspended. Mr. Morris entered the plea of guilty and it was accepted by the circuit court.

Mr. Morris was sentenced on May 3, 2013, to 60 years' imprisonment. He thereafter filed a timely appeal, but then on August 19, 2013, he filed an affidavit withdrawing his appeal.

On April 7, 2015 (dated March 30, 2015), Mr. Morris filed a *pro se* motion seeking a reduction of his sentence. The circuit court denied that motion on April 24, 2018.

On April 15, 2015 (dated March 20, 2015), Mr. Morris filed a *pro se* habeas petition. Counsel was appointed to represent Mr. Morris. In his state

habeas petition, Mr. Morris raised issues regarding alleged illegalities with his sentence, infirmities with his conviction, and ineffective assistance of counsel. He did not, however, raise any Fourth Amendment issues of any kind.

The circuit court denied the habeas petition and dismissed it on October 2, 2018, without holding an evidentiary hearing.  No certificate of probable cause, or denial of a certificate of probable cause, was issued by the circuit court.  Mr. Morris never sought a certificate of probable cause from either the circuit court or the South Dakota Supreme Court.  On February 27, 2020, Mr. Morris filed his federal habeas petition in this matter.  See Docket No. 1.

Respondent now moves to dismiss Mr. Morris' federal habeas petition because it is barred by the one-year statute of limitations and the claims therein are procedurally defaulted.  Mr. Morris claims the statute of limitations should be tolled until he receives discovery and that he can show cause for his procedural default.  The court recommends granting respondents' motion entirely without holding an evidentiary hearing for several reasons.

## DISCUSSION

### A.    Mr. Morris Can Seek Relief Under 28 U.S.C. § 2241

As an initial matter, Mr. Morris maintains he filed his petition under 28 U.S.C. § 2241, so respondents' arguments based on the statute of limitations and exhaustions requirements for petitions arising under 28 U.S.C. § 2254 do not apply to him.  He alleges this court misconstrued his petition as one arising under § 2254.

Section 2241 empowers federal district courts to issue writs of habeas corpus within their jurisdiction to any prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2241(c)(3). This provision does not draw a distinction between prisoners in state custody seeking habeas relief and those in federal custody seeking similar relief. Id. Section 2241 also provides where a prisoner is in state custody in a jurisdiction where that state contains two or more federal judicial districts, concurrent jurisdiction is provided to both the federal judicial district where the prisoner was convicted, and to the district where the prisoner is imprisoned. See 28 U.S.C. § 2241(d). The state prisoner may choose to file his habeas petition in either district. Id.

Although § 2241 quite clearly provides for habeas jurisdiction and habeas relief for both prisoners held pursuant to a state conviction as well as prisoners held pursuant to a federal conviction, the Eighth Circuit states categorically that the exclusive vehicle for habeas relief for prisoners in the custody of a *state* is 28 U.S.C. § 2254. See Singleton v. Norris, 319 F.3d 1018, 1022-23 (8th Cir. 2003); Crouch v. Norris, 251 F.3d 720, 723 (8th Cir. 2001). "A person in custody pursuant to the judgment of a State court" can only obtain habeas relief through § 2254, no matter how his pleadings are styled. Crouch, 251 F.3d at 723. This statement fails to give effect to the express language of § 2241 affording habeas relief to *any* prisoner held in violation of the United States Constitution and completely nullifies the concurrent

10

jurisdiction provision allowing one of either two federal judicial districts to entertain a state prisoner's habeas petition under § 2241.

The Eleventh Circuit has addressed this issue and come to a slightly different conclusion, though pragmatically, the result ends up being the same as the Eighth Circuit's holding.  In <u>Thomas v. Crosby</u>, 371 F.3d 782, 787 (11th Cir. 2004), a state prisoner filed a § 2241 habeas petition in federal court attacking the Florida Parole Commission's decision concerning his parole eligibility.  <u>Thomas</u>, 371 F.3d at 784.  The magistrate judge to whom the matter was referred considered the petition to be a § 2254 petition because the petitioner was in state custody rather than federal.  <u>Id.</u>  The magistrate judge then recommended dismissal of the petition because the claims had not been exhausted in state court and because some claims were procedurally defaulted. <u>Id.</u>  The district court adopted that recommendation.  <u>Id.</u>  The Eleventh Circuit held that the petition was governed by *both* § 2241 and § 2254.  <u>Id.</u>

"A state prisoner seeking post-conviction relief from a federal court has but one remedy:  an application for a writ of habeas corpus.  All applications for writs of habeas corpus are governed by § 2241, which generally authorizes federal courts to grant the writ—to both federal and state prisoners.  Most state prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254.  That is, if a state prisoner is 'in custody pursuant to the judgment of a State court,' his petition is subject to § 2254.  If, however, a prisoner is in prison pursuant to something other than a judgment

11

of a state court, e.g. a pre-trial bond order, then his petition is not subject to § 2254." Id. at 787.

The Eleventh Circuit held this interpretation of both § 2241 and § 2254 was necessary in order to give full effect to *all* the language of § 2241(c)(3), mentioned above, which does not distinguish between state and federal custody in describing the writ available. Id. at 785-87. But an interpretation which held § 2241 to be a completely separate alternative to § 2254 would render § 2254 a nullity: if a state prisoner had the option of filing a § 2241 petition subject to no restrictions or conditions precedent, or could choose to file pursuant to § 2254 with all its attendant restrictions and conditions, no state prisoner would ever choose to file under § 2254. Id. That, also, could not have been Congress' intent in enacting § 2241. Id. See also In re Wright, 826 F.3d 774, 781 (4th Cir. 2016) (following Thomas and stating if a state prisoner could opt out of the operation of § 2254 by merely relabeling his petition, § 2254 would be a "dead letter").

The upshot of the Thomas and Wright holdings is this: a state prisoner cannot escape the restrictions of § 2254 by filing a habeas petition under § 2241, but he *can* file a petition under § 2241. However, that petition will be subject to all the same rules as to exhaustion, statute of limitations, and standard of review that apply under § 2254. So it is in Mr. Morris' case. This court holds he may permissibly file his habeas petition under the auspices of § 2241, but the rigorous procedural and substantive requirements of petitioners under § 2254 continue to apply with equal force to him.

12

**B.     Statute of Limitations**

Petitions for habeas relief in federal court collaterally attacking state

court convictions are governed by the Antiterrorism and Effective Death Penalty

Act (AEDPA).  AEDPA contains a one-year statute of limitations.  Specifically,

28 U.S.C. § 2244(d) provides in relevant part:

> **(d)     (1)** A 1-year period of limitation shall apply to an application
> for writ of habeas corpus by a person in custody pursuant to
> the judgment of a State court.  The limitation period shall run
> from the latest of:
>
>> **(A)** the date on which the judgment became final by
>> the conclusion of direct review or the expiration of the
>> time for seeking such review;
>>
>> **(B)** the date on which the impediment to filing an
>> application created by State action in violation the
>> Constitution or laws of the United States is removed, if
>> the applicant was prevented from filing by such State
>> action;
>>
>> **(C)** the date on which the constitutional right asserted
>> was initially recognized by the Supreme Court, if the
>> right has been newly recognized by the Supreme Court
>> and made retroactively applicable to cases on
>> collateral review;
>>
>> **(D)** the date on which the factual predicate of the claim
>> or claims presented could have been discovered
>> through the exercise of due diligence.
>
> **(2)**   The time during which a properly filed application for
> State post-conviction or other collateral review with respect to
> the pertinent judgment or claim is pending shall not be
> counted toward any period of limitation under this
> subsection.

See 28 U.S.C. § 2244(d)(1) and (2).

A judgment or state conviction is final, for purposes of commencing the

statute of limitation period, at "(1) either the conclusion of all direct criminal

appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (2) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time allotted for filing a petition for writ of certiorari with the Supreme Court is ninety days. Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001).

The limitations period for § 2254 petitions is subject to statutory tolling. See 28 U.S.C. § 2244(d)(2). This one-year statute of limitation period is tolled, or does not include, the time during which a properly filed application for state post-conviction relief or other collateral review is pending in state court. Faulks v. Weber, 459 F.3d 871, 873 (8th Cir. 2006); 28 U.S.C. § 2244(d)(2). The phrase "post-conviction or other collateral review" in § 2254's tolling provision encompasses the "diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." Duncan v. Walker, 533 U.S. 167, 177 (2001). Thus, § 2254's tolling provision "applies to all types of state collateral review available after a conviction." Id.

State collateral or post-conviction proceedings "are 'pending' for the period between the trial court's denial of the [post-conviction relief] and the timely filing of an appeal from it." Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005) (citing Peterson v. Gammon, 200 F.3d 1202, 1203 (8th Cir. 2000)); see

14

also Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (an application for state post-conviction review is pending until a mandate is issued).

However, state proceedings are not pending for the ninety-day period "following the final denial of state post-conviction relief, the period during which an unsuccessful state court petitioner may seek a writ of certiorari from the United States Supreme Court." Jihad, 267 F.3d at 805. Additionally, "[s]tate proceedings are not pending during the time between the end of direct review and the date an application for state [post-conviction relief] is filed." Maghee, 410 F.3d at 475 (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)). In short, the one-year statute of limitations begins to run after the state conviction is final, is tolled while state habeas proceedings are pending, and then begins running again when state habeas proceedings become final. Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003).

Here, Mr. Morris's AEDPA statute of limitations began to run on August 19, 2013, when the South Dakota Supreme Court dismissed his direct appeal at his request. The 90-day tolling period for seeking a writ of certiorari from the United States Supreme Court does not apply in Mr. Morris' case because he did not see his direct appeal through to a decision on the merits but instead dismissed the appeal. The one-year AEDPA limitations period, therefore, expired on August 19, 2014.[1]

---

[1] The court notes that even if Mr. Morris were given the benefit of the 90-day period to petition for a writ of certiorari, his AEDPA limitations period would still have expired before he ever filed any motion for post-conviction relief in state court. His 90-day-plus limitations period would have expired

The first petition Mr. Morris filed after dismissing his direct appeal was a motion for reduction of his sentence filed April 7, 2015, but dated March 30, 2015.  Even if this motion was a proper motion seeking collateral relief, it could not toll the running of Mr. Morris' AEDPA limitations period because that statute of limitations had already expired approximately 8 months earlier. Curtiss v. Mt. Pleasant Corr. Fac., 338 F.3d 851, 853 (8th Cir. 2003) (filing of state habeas petition could not toll AEDPA limitations period where AEDPA limitations period had already expired before the filing of the state petition). The court concludes Mr. Morris' federal habeas petition is time-barred.

Mr. Morris invokes subsection (d)(1)(D) of § 2244, cited above, as grounds for tolling his limitations period:  he states his petition is not an outright request for habeas relief, but rather it is a request to obtain discovery in order to determine whether his Fourth Amendment rights were violated due to invalid or nonexistent search warrants and arrest warrants.  Because subsection (d)(1)(D) tolls the statute of limitations until the "date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence," Mr. Morris argues the statute of limitations should be tolled until he is provided the search warrants and arrest warrants from his state court file.

But subsection (d)(1)(D) does not toll the statute of limitations until facts are *actually* known, but rather until the facts "could have been discovered

---

approximately November 20, 2014.  He did not file his first state post-conviction motion until—at the very earliest—March 20, 2015.

through the exercise of due diligence."  Here, Mr. Morris waited six and a half years after his AEDPA limitations period began to run before filing his § 2241 petition seeking discovery of the documents requested.  That is simply not "due diligence" under the case law.

The Supreme Court has stated that a petitioner must establish "reasonable diligence" in pursuing his federal habeas rights, not "maximum feasible diligence."  Holland v. Florida, 560 U.S. 631, 653 (2010).  The Eighth Circuit has summarized what does and does not constitute due diligence on the part of the petitioner:

> A petitioner acts with diligence when, for example, he writes letters to his attorney asking her to file a habeas petition, contacts the court to learn about the status of his case, seeks to have his attorney removed for failure to pursue his case, and files a pro se petition the very day that he learns it is late.  In contrast, a petitioner does not act diligently when he simply assumes that his attorney is working on his case even though she does not respond to his communication and hangs up on him when he calls.

See Williams v. Kelley, 830 F.3d 770, 773 (8th Cir. 2016).

In one case, where the petitioner was prevented from filing for three months due to his medical status (he was placed on suicide watch), the court held no extraordinary circumstances were prevented because petitioner failed to show why he could not have filed in the nine months remaining of the limitations period.  Gordon v. Arkansas, 823 F.3d 1188, 1195-96 (8th Cir. 2016).  See also Nelson v. Norris, 618 F.3d 886, 892-93 (8th Cir. 2010) (petitioner failed to demonstrate due diligence when he failed to take any action for nine months).

Where a petitioner waited five years before taking action, thinking that an appellate court would appoint a lawyer for him, the petitioner failed to demonstrate due diligence.  Burks v. Kelley, 881 F.3d 663, 666-67 (8th Cir. 2018).  Likewise, where a petitioner mistakenly believed his attorney had filed a notice of appeal in his case, the petitioner's lack of any activity for a year was insufficiently diligent.  Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008).

In another case, a petitioner wrote a letter to the court six weeks before the AEDPA limitations period was going to expire, asking to speak to his public defender about some matters unrelated to filing a federal habeas petition.  English v. United States, 840 F.3d 957, 959 (8th Cir. 2016).  No habeas petition was filed.  Id.  The petitioner waited another six months before filing the petition on his own.  Id.  The court held the petitioner did not act with due diligence.  Id.

Here, Mr. Morris offers no explanation for why he waited six and a half years to file his § 2241 petition in this court.  He claims his state habeas petition was dismissed October 2, 2018, but that his counsel never told him about the dismissal until April 3, 2019.  This accounts for only six months of a six and one-half *year* delay.  And, even if true, by the time Mr. Morris filed his state habeas petition in 2015, let alone by the date the petition was dismissed in 2018, the AEDPA limitations period had *already expired.*  The filing of a state habeas petition cannot toll the AEDPA limitations period where AEDPA's

statute of limitations has already expired by the time the state petition is filed. Curtiss, 338 F.3d at 853.

The court notes the one-year AEDPA statute of limitations is not a jurisdictional bar. Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003). The time limit is subject to equitable tolling when "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time. Id. A petitioner seeking equitable tolling must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Holland, 560 U.S. at 649; Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The decision whether to equitably toll AEDPA's limitations period is a fact-intensive inquiry based upon the totality of the circumstances. Holland, 560 U.S. at 649-50. Equitable tolling represents "an exceedingly narrow window of relief." Shoemate v. Norris, 390 F.3d 595, 597 (8th Cir. 2004) (quoting Jihad, 267 F.3d at 805).

Here, Mr. Morris never establishes that any "extraordinary circumstance" stood in the way of filing of his § 2241 petition. But even if he had established such circumstances, the request for equitable tolling is subject to the same due diligence standard discussed above that applies to tolling under § 2244(d)(1)(D). As discussed above, the court has concluded the fact Mr. Morris waited six and a half years before filing his federal petition simply does not demonstrate due diligence. Therefore, the court recommends Mr. Morris' petition be dismissed with prejudice as time-barred.

19

### C.    Mr. Morris Did Not Exhaust His Fourth Amendment Claims

Federal habeas review of state court convictions is limited as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
    (A) the applicant has exhausted the remedies available in the courts of the state; or
    (B)    (i) there is an absence of available State corrective process; or
        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
* * *
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See 28 U.S.C. § 2254(b) and (c).  The above codifies what was previously a judicial doctrine of exhaustion.

A federal court may not consider a claim for relief in a habeas corpus petition if the petitioner has not exhausted his state remedies as to that claim. See 28 U.S.C. § 2254(b).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted.  Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991).  The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings.  Rose v. Lundy, 455 U.S. 509, 518 (1982).

As discussed above in the FACTS section of this opinion, Mr. Morris did not raise any issues in his state habeas petition regarding any alleged Fourth Amendment violations related to either search warrants or arrest warrants. AEDPA requires state prisoners to first present their claims in state habeas court at both the trial and appellate level before presenting those claims in a federal habeas petition. Therefore, the fact that Mr. Morris never presented any Fourth Amendment claims to the state habeas court means this court cannot review those claims.

Normally, the court would dismiss an unexhausted petition so that the petitioner can return to state court to exhaust his claims by presenting them there first. See 28 U.S.C. § 2254; Rose, 455 U.S. at 522; Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998). However, where it is no longer possible for the petitioner to seek relief in state court, then the court considers whether the petitioner's claims are procedurally defaulted.

**D.    Mr. Morris' Claims are Procedurally Defaulted**

Procedural default is sometimes called the "adequate and independent state grounds" doctrine. A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims, has committed "procedural default." Coleman, 501 U.S. at 731-32, 735 n.1. If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules. Id. However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return

to state court as would be the case in a dismissal for failure to exhaust state remedies.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[2] <u>Coleman</u>, 501 U.S. at 750.  <u>See also</u> <u>Ruiz v. Norris</u>, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citations omitted).

"Adequate and independent state grounds" exist for the state court's decision if the decision of the state court rests on state law ground that is independent of the federal question and adequate to support the judgment. <u>Coleman</u>, 501 U.S. at 729.  "This rule applies whether the state law ground is substantive or procedural." <u>Id.</u> at 729.  "[A] state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988).

---

[2] To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence.  <u>Schlup v. Delo</u>, 513 U.S. 298, 321, (1995).   A successful claim of actual innocence requires the petitioner to support his allegations with new, reliable evidence.  <u>Weeks v. Bowersox</u>, 119 F.3d 1342, 1351 (8th Cir. 1997).  Mr. Morris does not invoke the fundamental-miscarriage-of-justice exception, so the court does not analyze that issue.

Here, there are two procedural defaults committed by Mr. Morris at the state habeas court level. First, he simply did not present his Fourth Amendment claims at all in state court. Secondly, following the circuit court's denial of his habeas petition, Mr. Morris was required to seek a certificate of probable cause from the circuit court within 30 days. See SDCL § 21-27-18.1. If the circuit court refused to issue a certificate, Mr. Morris would then have been required to seek a certificate of probable cause from the South Dakota Supreme Court within 20 days after the circuit court denied such a request. Id. Mr. Morris did not ask for a certificate of probable cause from either the state circuit court or the state supreme court. This, too, is a procedural default.

Nor is it possible for Mr. Morris to return to state court to rectify the error. The South Dakota Supreme Court zealously and strictly enforces the time constraints of SDCL § 21-27-81.1. Hannon v. Weber, 2001 S.D. 146, ¶ 8, 638 N.W.2d 48, 50. The court has refused to entertain motions for certificates of probable cause that are one day late. Id. It has refused to apply "notice" or "substantial compliance" notions to the periods of time described by SDCL § 21-27-18.1. Failure to abide by the time constraints of the statute are deemed a matter of jurisdiction by the court so that failure to move for a certificate of probable cause within the statute's time frame divests the court of jurisdiction to hear the matter. White v. Weber, 768 N.W.2d 144, 149 (S.D. 2009). It has now been nearly two years since the state habeas court issued its order denying Mr. Morris' habeas petition. If the South Dakota Supreme Court

23

will not countenance a one-day delay as in <u>Hannon</u>, it will not countenance a delay of almost two years in Mr. Morris' case. It would be fruitless to send Mr. Morris back to state court to try to rectify his procedural default because there is no longer any remedy for him there.[3]

As noted above, when a procedural default occurs, a petitioner can cure the default in one of two ways: (1) by showing cause and prejudice or (2) by demonstrating that a fundamental miscarriage of justice will occur if the court does not address the merits of his petition. Mr. Morris does not attempt to demonstrate a fundamental miscarriage of justice, so the court considers cause and prejudice.

Mr. Morris asserts his habeas lawyer delayed for six months before notifying him that the state circuit court denied his habeas petition. If this is true, this would supply cause to excuse the fact that Mr. Morris missed the deadlines in SDCL § 21-27-18.1 for seeking a certificate of probable cause. <u>Martinez v. Ryan</u>, 566 U.S. 1, 14 (2012) (holding ineffectiveness of state habeas counsel may establish cause for procedural default in some narrow circumstances). However, any delay by state habeas counsel in notifying Mr. Morris of the circuit court's decision does not provide cause for the total

---

[3] Nor could Mr. Morris return to state court and file a completely new habeas petition in state court that included his Fourth Amendment claims. The law of South Dakota limits the filing of successive habeas petitions to those instances where a new constitutional law is announced that applies retroactively to cases on collateral review or to cases where new evidence is discovered of petitioner's innocence. <u>See</u> SDCL § 21-27-51. Neither of these exceptions apply to Mr. Morris, so he would not be allowed to file a second habeas petition in state court.

24

omission of any Fourth Amendment claim before the state habeas court. Mr. Morris, not his counsel, drafted and filed his state habeas petition.  The fault, if any, for failing to include any Fourth Amendment claims in that petition lies only with Mr. Morris.  The court concludes Mr. Morris has not established cause sufficient to excuse his procedural default.

Mr. Morris also does not address the second prong of the equation--prejudice.  From this court's thorough review of Mr. Morris' file, it would be impossible for him to demonstrate prejudice with regard to his Fourth Amendment claims.

For each search conducted by police at each step of their investigation of Mr. Morris, they obtained a search warrant.  A search warrant is valid if it is supported by facts given under oath that show probable cause that evidence of a crime will be discovered in the place to be searched.  A search warrant must also describe with particularity the place to be searched and the items to be searched for.

"When the affidavit supporting the search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched, probable cause exists."  United States v. McIntyre, 646 F.3d 1107, 1115 (8th Cir. 2011) (quoting Unites States v. McArthur, 573 F.3d 608, 613 (8th Cir. 2009) (quoting United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002))).  See also Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause requires only a showing of fair probability, not hard certainties."  United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir. 2008).

25

Whether a search warrant is supported by probable cause is to be determined by considering the totality of the circumstances. United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007). The issuing judge's determination of the issue of probable cause should be paid "great deference." United States v. O'Dell, 766 F.3d 870, 873 (8th Cir. 2014).

Reviewing courts examine the sufficiency of an affidavit in support of a search warrant using "common sense" and not using a "hypertechnical" approach. Grant, 490 F.3d at 632 (citing United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993))). "Where the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." O'Dell, 766 F.3d at 874. See also Hudspeth, 525 F.3d at 674; United States v. Olvey, 437 F.3d 804, 807 (8th Cir. 2006).

The court has reviewed the affidavits in support of the search warrants as well as the search warrants themselves and sees nothing facially that would lead the court to distrust the finding of probable cause. V's statements were the first evidence in support of the very first search warrants. Her statements were detailed and consistent, which lends credence to them. In addition, many of the facts she articulated were corroborated by objective findings such as the physical examination of her hymen, the presence of a hotel across the street from a Billion automobile sales lot, and records from that hotel supporting V's story that Mr. Morris rented a room there around the time V alleged he had

digitally penetrated her.  Mr. Morris himself corroborated V's statements, insisting in his statement to police that V would not lie.  Also, Mr. Morris confessed an intense curiosity about the development of the bodies of prepubescent girls and admitted to peeking at V's breasts the same night as the July 2/3 incident.  There was ample probable cause to support the first two search warrants issued for Mr. Morris' home and his person.

Each new search warrant built upon the evidence obtained in those first search warrants.  That evidence included pornographic photos of V in Mr. Morris' home, incriminating searches found on his computer, his recorded phone call from the jail with his sister, Xanax tablets in a mislabeled prescription bottle, and empty and full bottles of Fuze beverages.  Finally, Mr. Morris' own statement to the police corroborated her story for--while he never admitted remembering molesting V--he did vouch for V's honesty and stated that if V said it happened, then it happened.  The court can perceive no meritorious Fourth Amendment claims relating to the searches.  Mr. Morris, therefore, cannot show prejudice for having failed to bring those claims before the state courts.

As to Mr. Morris' arrest, there was a valid arrest warrant accompanying his first indictment issued July 18, 2012.  He was arrested without an arrest warrant on July 3, 2012.  A state court made a finding of probable cause for that arrest on July 4, 2012.

A warrantless arrest, like a search warrant, is valid if it is supported by probable cause.  Probable cause exists where totality of the facts and

27

circumstances are sufficient to lead a reasonable person to believe that the defendant has committed a crime.  There need only be a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity.  United States v. Torres-Lona, 491 F.3d 750, 755-756 (8th Cir. 2007).  There must be evidence which would "warrant a man of reasonable caution in the belief" that a crime has been committed.  Wong Sun v. United States, 371 U.S. 471, 479 (1963).

Again, the warrantless arrest was made on the strength of V's detail-rich statements, the corroboration of many of the facts V related as discussed above, and Mr. Morris' own statements to the police.  The court finds no hint of a Fourth Amendment violation connected to Mr. Morris' warrantless arrest.  He was then promptly charged with a complaint, which was timely replaced by an indictment and arrest warrant.  The court concludes Mr. Morris cannot show prejudice in order to excuse his procedural default for having failed to raise any Fourth Amendment claims in state court related to his arrest.

Because Mr. Morris did not exhaust his Fourth Amendment claims and is now procedurally barred from doing so, and because he has failed to show either cause and prejudice or a fundamental miscarriage of justice, the court concludes his Fourth Amendment claims are procedurally defaulted in this court and cannot be reviewed on their merits.

## E.    Mr. Morris' Fourth Amendment Claims Are Not Reviewable

The basis of Mr. Morris' § 2241 petition is to seek evidence that the searches and his arrest were unlawful under the Fourth Amendment.  Even if

Mr. Morris' claims were not time-barred and procedurally defaulted, his Fourth Amendment claims are not subject to review by a federal habeas court pursuant to the Supreme Court ruling in Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Court addressed the following question: "whether a federal court should consider, in ruling on a petition for habeas corpus relief filed by a state prisoner, a claim that evidence obtained by an unconstitutional search or seizure was introduced at his trial, when he has previously been afforded an opportunity for full and fair litigation of his claim in the state courts." Id. at 469. The Court held that a federal court shall not consider a Fourth Amendment claim in a § 2254 petition when the petitioner had the opportunity to fully and fairly present the claim to the state courts. Id. at 466.

The Court premised its decision on the following analysis. The Court reasoned that the value of the exclusionary rule[4] is greatest at the trial and appellate levels because the purpose of the exclusionary rule, to deter law enforcement from violating the Fourth Amendment, is more immediately effectuated at those levels. Id. at 492-93. "As the exclusionary rule is applied time after time, it seems that its deterrent efficacy at some stage reaches a

---

[4]The exclusionary rule is not a personal constitutional right but rather a " 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.' " Stone, 428 U.S. at 486 (citing United States v. Calandra, 414 U.S. 338, 347 (1974)). "Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." Calandra, 414 U.S. at 347.

point of diminishing returns, and beyond that point its continued application is a public nuisance." Id. at 494 (citation and internal quotation marks omitted).

Thus, on *collateral* review (habeas practice is a form of collateral review), the Court found that the value of enforcing the exclusionary rule is minimal compared to the high costs. Id. at 493. Such costs include diverting the focus of the trial from the ultimate question of guilt or innocence, deflecting the truth-finding process, excluding reliable and probative evidence, and freeing the guilty. Id. at 491-90. "These long-recognized costs of the rule persist when a criminal conviction is sought to be overturned on collateral review on the ground that a search-and-seizure claim was erroneously rejected by two or more tiers of state courts." Id. at 491.

Thus, the Stone Court concluded that in the federal habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 495. The Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494.

The Eighth Circuit has fully adopted and implemented the Stone decision with respect to § 2254 petitions. The court in Willett v. Lockhart, 37 F.3d 1265 (8th Cir. 1994) (*en banc*), expounded upon the Stone decision. Convicted for possessing a controlled substance with intent to deliver, Mr. Willett appealed,

challenging the trial court's findings that police officers had probable cause to stop his vehicle, conduct a warrantless search, and seize a gun, drug paraphernalia, and drugs.  Id. at 1266.  Mr. Willett argued that this allegedly unreasonable search and seizure violated his Fourth Amendment rights.  Id. In his federal habeas petition, he claimed that the state court's conclusions were not fairly supported by the record.  Id.

The Court of Appeals addressed the issue of whether "federal habeas courts are to review the proceedings in state court . . . to determine whether the state afforded the petitioner an opportunity for full and fair litigation."  Id. at 1268.  The Willett court concluded that a federal habeas court should not review state court records to determine if the state's factual findings on a Fourth Amendment claim are supported by the record.  Id. at 1270.  Rather, Stone only requires that "the petitioner have been afforded in the state courts an *opportunity* for full and fair litigation, not that this opportunity must produce either factual findings or legal conclusions that would survive ordinary federal review."  Id. at 1269 (internal citation and quotation marks omitted).

Clarifying what is meant by "opportunity for full and fair litigation," the court adopted the following test:

> Under this test, a Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system. . . . The federal courts on habeas review of [Fourth Amendment] claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but whether the state provided an opportunity for such litigation.

Id. at 1273 (adopting the test set forth in Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1990).

The court continued:

> Application of the first part of the test is simple enough–either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not). Further, with a state court mechanism for consideration of such claims in place, we think that it will be the rare case where there is a failure of the mechanism that reaches constitutional dimensions.[5]

Id. at 1272.  The court ultimately held that the Supreme Court's holding in Stone barred federal habeas review of Mr. Willett's Fourth Amendment claims. Id. at 1273.

In Chavez v. Weber, 497 F.3d 796 (8th Cir. 2007), the Eighth Circuit applied the test articulated in Willett to address petitioner's federal habeas claim that the district court erred in refusing to review his Fourth Amendment claim pursuant to Stone.  Id. at 801.  The Eighth Circuit upheld the district court's decision and provided the following analysis:

> The district court correctly concluded that Chavez had an opportunity for full and fair litigation of his Fourth Amendment claim, and thus Stone bars federal habeas review of that claim. To show that he was not afforded an opportunity for full and fair litigation of his claim, Chavez would have to show that the State provided no corrective procedures at all to address the alleged Fourth Amendment violation or that the State provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.  In this case, the State provided a corrective mechanism

---

[5]The Willett court noted that a "state appellate court's summary affirmance, a short opinion, or a written opinion that fails to discuss one or more of the issues raised is not by itself indicative of a breakdown in the state's review mechanism."  Id. at 1272.

for any error the trial court may have made in admitting the
evidence by allowing Chavez to appeal his convictions to the South
Dakota Supreme Court.  Chavez urges that the Supreme Court
was wrong to uphold the trial court's suppression of the evidence.
However, a mere disagreement with the outcome of a state court
ruling is not the equivalent of an unconscionable breakdown in the
state's corrective process.  Our inquiry focuses on whether Chavez
received an opportunity for full and fair litigation of his claim, not
on whether legal or factual error in fact occurred.

Id. at 802.

In light of the holdings in Stone, Willett, and Chavez, this court cannot

consider the Fourth Amendment claim presented in Mr. Morris's federal habeas

petition.  In applying the test articulated in Willett, this court finds that

Mr. Morris had the opportunity to present his Fourth Amendment claims to

both the state circuit court and supreme court, and there is no evidence of any

breakdown in the fairness of state court proceedings.  Willett, 37 F.3d at 1273;

Chavez, 497 F.3d at 802-03.  Thus, even if Mr. Morris's petition was

satisfactory procedurally, he would not be entitled to federal habeas relief on

the merits of his Fourth Amendment claim.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge

respectfully recommends respondents' motion to dismiss [Docket No. 8] be

granted in its entirety and that Mr. Morris' habeas petition be dismissed with

prejudice and without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and

recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1),

33

unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

   DATED this 13th day of May, 2020.

      BY THE COURT:

      VERONICA L. DUFFY
      United States Magistrate Judge